Good morning, Your Honors. Steve Hovechek and David Zugman on behalf of Mr. Avila. Your Honors, I'll be addressing the 851 issues this morning, and Mr. Zugman will address the wiretap issue. With respect to the 851, we have a two-pronged attack. Effectively, there's no compliance with the 851 procedures. And then our other argument is that based upon the construction of 841 that this court adopted in Buckland, that the fact of the conviction here does need to go to the jury, even though Amadaris Torres holds that it's not constitutionally compelled. So turning first to the procedural aspect of the case. But he knew that the government had to prove quantity beyond a reasonable doubt. No doubt about that, Your Honor. Yeah. So, go ahead. Well, our argument is basically that because this court has interpreted the statute as a matter of statutory construction to require that quantity be proved to the jury beyond a reasonable doubt, that the same construction should hold true for the fact of prior conviction because it's in the same portion of the statute that this court interpreted in Buckland. So that's basically the argument. It's not that it's constitutionally compelled. It's not that Amadaris Torres is overruled. It's simply a matter of statutory construction. So why would we rewrite the statute? Well, this court didn't rewrite the statute. It interpreted the statute. That was because there was a constitutional issue involved in Buckland. I agree. And I'm not arguing that my construction is constitutionally compelled. Then why would we rewrite? Why would we attempt to redo the statute if it's not constitutionally compelled? Or there's a need on our part to avoid a constitutional construction or a constitutional problem? My argument isn't that you need to avoid a constitutional problem. We have said that Amadaris Torres is wrong, but I understand that this court's bound by it. But our position is that having performed an act of statutory construction, this court assigned a meaning to that statutory language. Having assigned a meaning to that statutory language, that meaning now persists and applies throughout that portion of the statute. It was in a different context. I agree. It was in a different context, motivated by different concerns. But having adopted that remedy, just as the Supreme Court adopted a remedy in Booker that invalidated both constitutionally defective applications of the guidelines and also applications of the guidelines that aren't in any way constitutionally defective. But because Amadaris Torres is constantly under attack, why? Are you just trying to preserve future opportunities to take advantage of a change in the law in that respect? Well, I think that there's an argument that it's wrongly decided. Certainly, five members of the Supreme Court have indicated that that's the case. But we are preserving the issue. I'm not arguing that issue to Your Honor today because that would be a waste of your time. But that's basically the answer. Let me move on to the procedural issue here. 851D sets out a method for attacking and for supporting a prior conviction in order to enhance an individual's sentence. And this Court has held in a number of cases, in Severino, Hamilton, that the requirements of 851D or 851 itself have to be strictly enforced. They have to be strictly complied with. Here we have a situation where the defendant, Mr. Avila, challenged the applicability of the enhancement. There was a hearing before the district court judge. The district court entered what it termed a final ruling, finding that the government failed to meet its burden of proof. Under those circumstances, 851D-2 gives the government a remedy. It says that you can ask to postpone the sentence. The district court has no discretion in that matter. It has to postpone it. Does it say it's an exclusive remedy, that there are no others? It doesn't use the word exclusive, but I think that if you read the language of it, it says that you can get the postponement, then you take the appeal, and then it says, if no such request is made, the court shall impose sentence as provided by this part. So while it doesn't use the word exclusive, it does say what happens if you don't do what the remedy is that's provided. The remedy provided is postponement and appeal. And in this case- Well, the government filed an appeal and then decided not to pursue the appeal and dismissed the appeal. We restored jurisdiction back with the district court. Well, this court did return jurisdiction to the district court. However, that ruling, the district court's ruling, was a final ruling, and it's final for two reasons. Number one, it's final because the district court said that it was final, and that was at page 294 of the excerpt of record. The other reason is that in Smith versus Massachusetts, the Supreme Court said that when you take an appeal, that is an indication of the finality of the order appealed. So in this case, we have a situation where the court- Well, I don't think there's any dispute that once the government took an appeal, the district court was not able to touch the notice requirements. It couldn't do anything. Right. Once the court was divested of jurisdiction, yes. I mean, it clearly couldn't do that. So the court undertook no action in regard to 851. It did not until after this court remanded the case. Right. So once the court gets jurisdiction, it has the authority to revisit the issue. It has the authority. I don't agree that it has the authority to revisit the issue because 851d2 sets out a single remedy that allows for the government to, you know, basically get a second bite at the apple under some circumstances. It does not say that the district court can reconsider. So your argument would be, of course, that the government can't do anything. You couldn't either. The defendant couldn't ask for reconsideration either. I mean, it cuts both ways. You want us to write an opinion that says the defense can't ask for a reconsideration either? Well, I don't know that you would have to do that if you were to adopt- Why not? I mean, wait a minute. I mean, you either can do it or you can't. It doesn't seem to me that you can put handcuffs on the government but invite the defense to say, you can make any attempts to reconsider you want, but the government can't. I mean, it seems it would cut both ways. It looks to me like you're cutting off your nose here in future cases in order to make some progress on this one. We write for all cases, not just for yours. See what I mean? I understand. I don't see how we can get out from underneath it. Your position seems to me to say nobody can do it. It's over at that point. And that doesn't make any sense. I mean, we want the district courts that have jurisdiction to be able to reconsider rulings. This goes on all the time. I mean, we have a couple district court judges here. There are motions for reconsideration all the time. And it seems that makes a lot of sense because you want those things to be taken care of in the district courts, not to have to come up here so that we can mess around with them and say, oh, well, we're not going to allow the district court to reconsider anything. It just doesn't make any sense. Well, if I may, I'd like to respond. I see two points in Your Honor's comments. The first one, I think, is with respect to whether or not we're asking you just to rule against the government and make a rule that doesn't apply to us. And that's, in fact, exactly what we want you to do. And the reason that we want you to do it is that 851d2 sets out the government's remedies. So when you construe 851d2, you're necessarily construing their rights, not the defense rights. So I don't think there's a problem with symmetry if you adopt the interpretation of the statute that we're urging. That's number one. Do you want to save some time? Are you going to divide your time up? Oh, we are, Your Honor, but I've got authorization from Mr. Zugman to go a little bit longer. And I'd like to respond to Judge Trott's second point with respect to I understand that there is general authority for judges to reconsider their rulings that they've entered. However, that general authority, I think, has to yield to the specific terms of this particular statute, which allows for a single remedy and says that you shall sentence in the event that that single remedy doesn't work. I understand how you're asking us to write it. You have inherent authority, but not in this particular situation because of the way the statute reads. Correct. Exactly.  Well, we've got your argument. Thank you, Your Honor. All right. Good morning, Your Honors. David Zugman on behalf of Mr. Avila. I'll be talking about the wiretap unless his role was the reason you wanted me to speak. With respect to the wiretap, this is an unusual case. It's a spinoff investigation, as Your Honors know. It came out of a Las Vegas investigation, and they found this cell phone number, which was associated with this other investigation. And the information the government had before it was, well, we have this cell phone number. We can subpoena Nextel. We can try to figure out the riddle of who is this Javier that's talking to Manuel Jara out in Las Vegas. And there were several avenues of investigation which simply were not tried that would have solved the case, and, in fact, quickly did solve the case once those investigative methods were tried. All right. I'll begin with the address of the business. Mr. Avila had a business, First Choice Transport, which was located at 4208 Willamette. If you drive up there and look at it, what do you see? Scovels Towing. Right. You see no reference at all to your client's business. Correct. Now, how do you find out it's your client's business? You say, well, they should have walked in. Right. And if they walk in, are there any photographs or videos of what you see when you walk in? Not that I am aware of. So we don't know. Well, there's testimony, though. Yeah, but we don't know. There's no photographs. Now, what do you see when you walk in that alerts somebody that this is your client's business? Well, there's uncontradicted testimony saying that his business license with his name is hanging on the wall. Yeah, that's wonderful, but I'd like to see a photograph of it. So would I, Your Honor. I wasn't trial counsel. I know. But so exactly how large is this business license and where is it? Well, I'm not familiar with the Los Angeles business license. I would presume it's like mine. Well, see, you're trying to tell us this is so obvious that anybody who wandered in there would see it. You can't tell me what it looks like. I don't see a picture of it. It's something hanging on a wall, what, behind a counter? Well, the burden's not on me, though, to establish necessity. The burden's on me to say this is something that ought to have been tried. This is something that the government presents to a district court judge and says, look, we've tried. We can't solve this case. We need a wiretap. It's not. But it seems to me your whole case centers around they should have walked in and seen, if they would have, they would have seen the license on the wall. I actually think my best claim is based on the cell phone because I think that it's. Okay, well, so did I. Excellent. The cell phone records, it's in the era of the Patriot Act, it's just puzzling that the government says that it could not have discovered Mr. Avala's identity through the cell phone. We all have cell phones. We've all gone through the process of getting cell phones. You have to pay for those cell phones, and you have to do that, as in Mr. Avala's case, with a credit card. And that information gives you, it goes out into so many different directions, so many different threads that you can follow up on, none of which were tried. And there's just no explanation as to why they weren't tried. We all have had the misfortune of being solicited on our cell phones to buy various services. Sometimes there's customer service inquiries. Oftentimes there's calls for surveys. And it's just, I don't understand why. No, I never had that happen. I never have either. I have to find out your service. I never had that happen. It happens at home, on my home phone. And as soon as I pick up the phone and they say, Mr. Pragerson, I say, well, he doesn't live here anymore. But sometimes I get five or six in a short period of time. Never had anybody ever call me on my cell phone. We know Mr. Avila is. Because I don't hear from anyone sometimes. Well, we know that Mr. Avila isn't quite as wary as Your Honor, because when they started listening to his cell phone, he would say, hello, this is Javier from First Choice Transport. And there is, you know, perhaps Your Honor has received a wrong number before, where you get a call from someone who didn't intend to call your cell phone. There are so many different ways you can try it. And I'm not saying they would succeed. I'm not saying for 100 percent certain. If you call Javier, he would say, hey, look, I'm also a drug trafficker and I've got this big meth thing. You also want to know who else was involved besides Javier. But that's always going to be true. You can always make that claim and say, look, the only way we'll know who's calling Javier is to listen to who he's calling. But that's always going to be true. So if it's always true, it's true. Well, then there's no need for a necessity requirement. I mean, if you can't – This scheme apparently started in Las Vegas, right? So they had reason to believe that it was larger than just what was happening in Las Vegas. My understanding of the investigation, I wasn't part of the Las Vegas case. I don't know what happened with that. My understanding is they were investigating a Las Vegas-based cell, and Mr. Avelo was making the unfortunate business connection with this organization, and that's where they got his cell phone number. Now, I'm not suggesting that there was no point that the government could not get a wiretap. I'm just saying that the court – doesn't mean that you have to follow up on the information you have before it. And more importantly, following up on the information would have prevented the government from making what I consider to be misrepresentations in the affidavit, saying things about Mr. Avelo which were not true. Those, you know, in any other context, we call those lies. But here we just call them misleading. And the only reason the government made these misrepresentations was because they didn't investigate. And if they investigated, they solved the case. And what's most perplexing is the government had a surveillance agent, an agent – Well, they would have learned about Javier, right? Correct. And what about the other people that Javier was dealing with? They lived with him. The people that they found were his son, James, his brother, Nicholas, all of whom were living at the same address. If they had found Javier, they would have known who these other characters were? Oh, yeah. Yeah. In fact, they stopped – they did a pretextual – admittedly pretextual stop on James to confirm his identity. So this idea that they were going to tip off these folks, it was only true so long as they were seeking the wiretap itself when they were writing the affidavit. It wasn't true when they actually had the information that they wanted to go on. So, I mean, it is always a question of how much the district court is going to require of the government in seeking the wiretap. And you're going to get the minimal effort that you require. The last point is the drug testing resources. And, of course, this is somewhat ironic as this was a condition of the supervised release of which Mr. Avila was on. Mr. Avila was required to call in to drug testing resources, GTR for short, and test, go in and do his P-test. And this was a federal contracted facility, which Mr. Avila called, I think it was, 33 times over the course of a month. And the government claimed, well, there was nowhere for us to go with that. And that's hogwash. There's no way that could be true. These places contract. They are getting money from the government to supervise these people. Probation officers and agents go to those sort of places all the time. And the reason I know that is I have clients who go to those places, and I often see orders to show cause which result from my clients' failures to comply with the rules or calling in or doing their tests. So you have 33 calls which you can link up to day and time and figure out who's calling. You get the name, and this case crumbled. It entirely cracked. The whole thing was solved once they learned the name. So I just think that's something the government should follow up on before it goes after a wiretap. Now, the point of the necessity requirement is we don't want the government to turn to the wiretap as a first resort. And I don't see how you can view this case as anything other than a first resort. I'd like to reserve the rest of my time for rebuttal. Thank you, Your Honors. May it please the Court. I'm Mike Rothell on behalf of the United States. Your Honors, I'll start with the 851 enhancement. In this case, the 851 enhancement the defendant is arguing should have been tried to a jury. That's not what they argue in district court, but Section 851 itself. They didn't argue that this morning, did they? I think they did argue that because they parse Section 841, they say because the drug quantity amount is tried to a jury, they say that it follows that the prior conviction must be tried to a jury. But unlike the drug quantity amount, Section 851 specifically commits the trial over whether the defendant had a prior conviction to the court. And so there's no reason, there's no way this court should depart from that unless there's some constitutional reason to. The double jeopardy argument here is at first interesting because the court did initially find the prior conviction did not apply then, granted the motion for reconsideration, and found it did apply. But the Monge case from the Supreme Court has held the double jeopardy clause doesn't extend into the circumstance of sentencing into trying a prior conviction. There's no reason why this case is distinguishable from that. The prior conviction here led to a mandatory minimum sentence. So it's like, analytically, as far as the double jeopardy clause is concerned, it's like any other sentencing enhancement or mandatory minimum. Actually, one doesn't even have to get to Almodores-Torres. If this would have been a mandatory minimum about, say, possessing a gun, the court could change its mind, find that it doesn't apply, then find that it does without implicating the double jeopardy clause. Almodores-Torres is the second reason that this isn't even a prior conviction, is not even something that's committed to a jury under apprendi anyway. As to ‑‑ it's interesting, the symmetry argument that counsel referred to where he said that he wanted the shall, the court must move on directly to sentencing because of the word shall in 851D2, and he wants that to apply to the government but not to defense counsel. Well, the same word shall is in 851D1, which is when the court finds that the enhancement or the mandatory minimum does apply, then the court shall proceed to sentencing. We don't dispute that defense counsel could move for reconsideration if counsel had evidence that the enhancement did not apply, and the government should be allowed to move for reconsideration, too. Besides, that's the normal presumption the district court is allowed to do that. It makes sense. Why not get at the truth? Why burden this court with an appeal when the district court is willing to reconsider it? I'll move to the wiretap if the court has no more questions on that. In the wiretap affidavit here, the question is whether within the four corners of that wiretap affidavit there was necessity established before Judge Tavrezian, and this court gives discretion to Judge Tavrezian in making that determination. The question is not just what investigation did the government do prior to the wiretap affidavit, but also its demonstration in the affidavit itself, which I think was about 69 pages here, that the further investigative efforts apart from the wiretap would reasonably appear unlikely to succeed in accomplishing the goals of the investigation, which included not just getting at Javier himself, but also discovering who the other members of the conspiracy were because the government in this case happened to know from the earlier wiretaps from Las Vegas that Javier appeared to be a high-level drug dealer dealing in significant quantities of methamphetamine. So the process of kind of picking apart the affidavit afterwards is one this court has generally rejected. In the Carnera case, the court said that defense counsel's arguments just were with the benefit of hindsight, picking out things the government could have done differently, and that wasn't enough. And that is what I think is going on here. I mean, I would agree. Well, there's a lot of boilerplate language in this affidavit and in all the affidavits that we saw at the district court level. Yes. They just come in with the standard lingo. Yes. But, Judge Potts, the question is what else is the government supposed to do because there are similar ---- Related to the specific circumstances of this case. Yes. And here the government ---- I mean, I agree that there's a large amount of boilerplate here, and that's what Judge Walter said in reviewing it. I stand with Judge Walter at the end of the hearing when he said, in sum, looking at it as a whole, there was a pretty good showing of necessity, and it's not just boilerplate. It's not fair to call it boilerplate if you take the general propositions and tie them into the specific facts of the case. Exactly. And that's what Appian did here, for example, in paragraph 44, where he talked to another agent, Agent Bond, in Las Vegas and talked about what the informants, who the informants were in Las Vegas and whether they could help here in Los Angeles. He also, in paragraph 67, did a similar thing in talking about grand jury testimony and granting immunity. And so that's what the government is supposed to do, and there's only so much the government can do to articulate it. So one is going to continue to see what would be the same sorts of statements in wiretap affidavits, and they need to be tied to the particular case. Here, there was a lot tied to the particular case in terms of what the actual calls were between defendant and the Las Vegas people, which I think helped establish that the defendant was a high-level drug dealer who is someone who would be suspicious of law enforcement and operates in secrecy. In the Brone case, which was then Judge Kennedy, he said that it was proper to use, to some extent, to use information from a prior investigation there in New York, and said it was highly relevant to show that the people now being investigated were sort of high-level people. I think there was also a drug case who would be suspicious and difficult to sort of penetrate their conspiracy. So I think that all those details about what the defendant is speaking to the Las Vegas people on the phone actually have some relevance to necessity as well. As to the specific allegation about the Scovels towing, I do think, standing here today, that the affidavit was right. I mean, we only look at the four corners of the affidavit. The stuff from outside the affidavit is not strictly relevant because the court rejected the Franks allegations. Defense counsel was referring to misrepresentations. There were no misrepresentations, according to the district court, that were at the level of warranting a Franks-type hearing, and I don't think counsel has shown that today. So when we look at the four corners of the affidavit, I think that saying that this business is not defendant's business goes a long way. But, you know, they were actually generally right about that, in that the sign says Scovels Towing. There's no evidence of another business there, as the implication of Judge Trott's questions was. You know, it's not really – it may be technically true that the defendant had a legitimate business here, but all we know is he had somewhere in the towing store a business license up with his company's name on it, presumably his name on it. And the testimony at trial was that he went there two to three times a week for a half hour to an hour to check mail. And that's not what we think of as a legitimate business in operating sort of between 9 and 5 and someone there for the bulk of that time. The owner of Scovels Towing testified that he didn't recall any customer ever visiting defendant at the store. So I think the affidavit, even looking outside of it, was generally right that it's unlikely that they're going to learn very much more by surveilling that. And if they did, you know, I do think – we look at the four corners here, but the question is not can we pick it apart and find something else that the DA could have done differently. The question is, was there enough there for Judge Tavrisian and his discretion to grant the wiretap? All right. Thank you. Thank you, Your Honors. Your Honors, just a couple of quick points on the 851 issue. Week 28 jayed up on Friday, the Stevens case, where the defendant wanted to object to the 851 allegation, but he didn't do so in writing. And in that case, the strict compliance was used against the defendant because only the defendant has the right to do the written denial. In that instance, strict compliance meant no, no, no, no rights challenge. You get your extra 10 years. And in this case, we're talking about – the shallow argument is we're talking – the provision of 851 is the government's right to appeal on a – when the allegation is found not to be true. There's no idea – if there is any symmetry, the symmetry would be let's bring the government to where the defendant is. The defendant has held strict compliance. Let's hold the government to strict compliance. Now, turn to the wiretap. Counsel is correct in saying that it's – the wiretap is evaluated by the four corners of the document. No question about that. And it is also true that the allegations about drug traffickers in general, about how they are furtive and suspicious of law enforcement and often change cell phones and they're usually rich and they can be often depicted on TV as such, those are usually true. But they weren't true in this case. Mr. Avila never changed his cell phone. Mr. Avila answered with his own name. Mr. Avila's business was not just a mail drop in. I have to take exception to this. Well, they didn't know that until they found out who he was. Does that make any difference? Yes, because the reason they didn't know that is because they didn't look. It's no answer to say, well, I didn't know these things weren't true when you could have known if they were true had you investigated. The government is at this point – it seems like there's a conflation of two principles. Wiretap, much of what they're saying are facts which were used to establish probable cause. No one's debating probable cause. Those facts are true. There was strong suspicion Mr. Avila was engaged in drug trafficking. But the question is, did they need the wiretap to solve it? And can anyone honestly say that there was no chance of crack in this case or a small chance or even a limited chance or even a middle chance they couldn't have cracked this case with normal investigation?  They could have gone to Scoville's Towing and looked inside. No one prevented them from doing that. They could have followed up on the threads on the cell phone. No one prevented them from doing that. They just didn't do it. Oh, and there's one last thing I thought about when I was sitting over there about the drug testing resources. You know what drug testing resources are going to have? They're going to have a case number. That's going to give you everything. If they figure out who Mr. Avila is by the 33 times he had to call in at a specific time with a specific number, and I bet they track those numbers. I bet they have caller ID. They're going to figure out the case number. That's going to lead them to a case, to a probation report, probably to a former prosecutor who prosecuted that case. They're going to know everything. Now, I understand it's always difficult to say, well, there's probable cause there. You're going to be letting a guy go who, you know, dealt meth. But the truth is this. You're writing law for everybody. The necessity requirement applies to all of us. And your Honor's question cuts just as wide a swath, especially in this era. We need to keep the government to the necessity requirement. Thank you, Your Honors. Thank you. The matter is submitted. We'll go on to the next case.
judges: Pregerson, Trott, Paez